Joe **BALLANFONTE** et al., Appellants,

v.

Kay **KIMBELL** et al., Appellees (two cases).

Nos. 16460, 16461.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 1, 1963.

Rehearing Denied Dec. 6, 1963.

Sullivant, West & Meurer and Carroll F. Sullivant, Gainesville, and Charles E. Crenshaw, Austin, for appellants.

Henderson & Bryant and William R. Bryant, Sherman, for appellees.

MASSEY, Chief Justice.

Though not companion to one another, these cases present a common question determinative of our disposition on appeal. The parties are substantially, though not entirely, the same. The subject matter, leases for oil, gas or other minerals, is the same, although upon two different leasehold estates.

The common question is whether, under existent circumstances, the lessors are entitled to have judgment declaring that the leases be canceled and the leasehold estates of the lessees forfeited because the oil production therefrom has ceased. Lessors, as plaintiffs, contend that there had been such a production failure over such a lengthy period of time as to effect cancellation of the leases, in that the oil recovered therefrom was in less than "paying quantities".

■ "Paying quantities" of oil from an oil well has ceased if, in the manner of its operation, it no longer yields a profit to the operator. If it is the only well, the lease on which it is situated has ceased to produce "in paying quantities". Garcia v. King, 1942, 139 Tex. 578, 164 S.W.2d 509.

■ "Paying quantities" is a profit, even small, over operating expenses. Whether production is "in paying quantities" is de-termined by ascertaining whether or not, under all relevant circumstances, a reasonably prudent operator would continue to operate a well in the manner in which it is being operated for the purpose of making a profit and not merely for speculation. Clifton v. Koontz, 1959, 160 Tex. 82, 325 S.W.2d 684, 79 A.L.R.2d 774.

In the case of a marginal well, where production is diminishing, the oil in the reservoir from which it is extracted by means of pump or siphon oftentimes sinks below a level at which the extraction is practical. For days, or even weeks, it may be economically practical to cease the process of extraction in order to allow seepage of the oil into the reservoir so that its level is raised and the efficiency of a resumed extraction process increased. It cannot be said that there is any production, or production "in paying quantities", during these days or weeks and it could properly be said that such had ceased. That is the case according to grammatical rules. The question, however, is resolved by legal rather than grammatical rules. Hence, the "reasonably prudent operator" test referred to in Clifton v. Koontz.

■ But what about a more extended period running into months or years? At what point has a well or lease ceased to produce "in paying quantities" as a matter of law according to mathematical calculation, and over how long a period is the mathematical calculation properly considered? The Supreme Court, in Clifton v. Koontz, supra (325 S.W.2d p. 690), said: " * * * there can be no limit as to time, whether it be days, weeks, or months, to be taken into consideration in determining the question of whether paying production from the lease has ceased." We consider ourselves bound thereby.

■ Lessors who seek to obtain a judgment that a lease is canceled for cessation of production because it has become less than "in paying quantities" are obliged to prove not only that the production is such that the lessees are not making a profit

from operations devoted to production, but furthermore that a reasonably prudent operator would not have continued under the circumstances in the attempts devoted to obtaining such production. Skelly Oil Company v. Archer, 1961, 163 Tex. 336, 356 S.W.2d 774, 783. From this opinion it is inferred (356 S.W.2d p. 783) that there may be instances in which, as a matter of law, an operating lessee is not making a profit from activities instituted to obtain production, but that nevertheless the fact question persists as to whether a reasonably prudent operator would have continued such activities under existent circumstances.

■ As applied to one of the leases the plaintiffs, appellants herein, selected a period of thirteen (13) months (following the expiration of the primary term of such lease on February 22, 1953), being for such period ending May 31, 1961. As applied to the other lease they selected a period of thirteen (13) months (following the expiration of the primary term of the lease on January 26, 1954), being for such period prior to May 1, 1961.

Such period, thirteen months, plaintiffs obviously believed was a sufficient limit as to time necessary to be taken into consideration by the trial court, sitting as the trier of fact as well as the law, in determining the question of whether paying production from the leases, or from either of them, had ceased. Certainly this period would have been sufficient had the trial court agreed with plaintiffs (as to either or both leases) that there had been a cessation of production "in paying quantities".

But the trial court, sitting as the trier of fact, either did not believe the period was long enough to satisfy it that there had been such degree of cessation or it did not believe the evidence preponderated to show that production "in paying quantities" had ceased. Of course, under the case of Skelly Oil Company v. Archer, supra, the trial court might have been satisfied that the period selected was of sufficient duration and paying production had indeed ceased,— but that the plaintiffs should not recover because the court nevertheless was of the opinion plaintiffs had failed to establish, preponderantly, that a reasonably prudent operator, under the same or similar circumstances, would not have continued his activities. We cannot be certain of the factual conclusions in the cases under examination since there are no findings of fact and conclusions of law. We recognize that in this type of case a plaintiff who fails to obtain a decree of lease forfeiture in the trial court confronts an insurmountable obstacle, or one nearly such, when he carries an appeal therefrom into the appellate courts.

■ We have examined the records in both cases. Disregarding the fact question existent as to whether a reasonably prudent operator would have continued his activities directed toward realizing production from either or both the leases and the wells thereon, we are of the opinion that the preliminary questions of whether the defendants were making a profit, during the thirteen month periods plaintiffs chose to use as a base upon which their proof was founded, were resolvable as matters of fact,—not established as matters of law,— and the trial court was entitled to find and conclude that the defendants made a profit on each well and lease during that period. Further, the trial court was at liberty to conclude that thirteen months was not a period of sufficient length, in view of the evidence on profit and loss, to compel its finding and conclusion that the defendants were not making a profit. It must be remembered that the plaintiffs were carrying the burden of proof upon this as upon other material ultimate issues of fact, and that a refusal to find for the plaintiffs, not a finding made for the defendants, is the action under examination.

Judgments in both cases are affirmed.