SOUTHWESTERN GAS PIPELINE,
INC., Appellant,

v.

Harry S. SCALING, Trustee; Frank A.
Bailey, Jr.; Ben N. Benson; W. Frank
Bowie; Pensareli, Inc.; Carter Founda-
tion; Barney Chapman, Inc.; I.B. Chap-
man, II; James R. Dunnaga; George E.
Ferguson; Robert A. Ferguson; Jack W.
Grimm; Lois A. Grimm; Robert T.
Highgate; B.D. Griffin; S. David Holla-
day; Michael Jaynes; Sheldon Labovitz;
Sherry Langford; Gary B. Laughlin;
Dorothy N. Leib, Ex.; Charles R. Lewis;
Alvin Luskey; Louis Luskey; Henry
Luskey; B & H Investment Co.; James
D. Malone; John B. McClane; Dr. Blane
E. McLaughlin; John W. McMackin;
A.M. Micallef; Dr. Elis Minton; O.K.
Building; Ophag Kruse; Jack Owsley;
Jerry Robin; Dr. Edward M. Sankary;
V–Ltd; Laverne Strand; Sunbelt Explo-
ration Inc.; Robert A. Watson; Larry B.
White; Charles Bamberger; Robert A.
White, Appellees.

No. 2–93–011–CV.

Court of Appeals of Texas,
Fort Worth.

Jan. 18, 1994.

Rehearing Overruled March 1, 1994.

Ralph P. Harrison and Thomas P. Battle, The Woodlands, for appellant.

Bill F. Bogle, Andrew D. Sims and Russell R. Barton, Harris, Finley & Bogle, P.C., Fort Worth, for appellees.

Gary F. DeShazo, Gary F. DeShazo & Associates, Austin, for cross-appellee.

Before LATTIMORE, WEAVER and HICKS, JJ.

## OPINION

LATTIMORE, Justice.

Southwestern Gas Pipeline, Inc. appeals from a judgment granted in favor of the

plaintiffs below, various working interest owners who sold gas to Southwestern under three different gas purchase agreements. In three points of error, Southwestern asserts that the trial court erred in granting interlocutory summary judgments in favor of the plaintiffs, in that: (1) Southwestern's failure, if any, to take required quantities of gas was excused by the unprofitability provision of paragraph V($l$) of the agreements; (2) plaintiffs failed to comply with the notice requirement of paragraph V(g) of the agreements; and (3) Sunbelt Exploration's claim was barred by the four-year statute of limitations.

We affirm in part, reverse and render in part, and remand to the trial court for a determination of profitability and damages, limited to the period when proper notice was given.

Defendant/Appellant Southwestern Gas Pipeline, Inc. ("SWGP" or "buyers") entered into three Gas Purchase Agreements with various working interest owners ("plaintiffs" or "sellers"), each of whom executed one or more of the contracts as a separate seller of his individual interest in the gas sold. The claims in this lawsuit involve only the contract year beginning September 1, 1984 and ending August 31, 1985. The terms of the three separate agreements are essentially the same, with differences not germane to any point of error presented. Under the agreements, SWGP was obligated to take, or to pay for if not taken, certain minimum quantities of gas from each well covered by the agreements. This payment was due ninety days after the end of the contract year, on November 30, 1985. SWGP alleges that this obligation is subject to various conditions and exceptions contained in the agreements.

On November 27, 1989, three days before the four-year statute of limitations expired, the majority of the sellers filed suit against SWGP, alleging that SWGP breached the agreements by failing to take and pay for, or to pay for if available and not taken, quantities of gas sufficient to satisfy the obligations of the agreements, seeking money damages for the contract price of the quantities not taken. On January 26, 1990, plaintiffs filed their First Amended Original Petition which added a new plaintiff, Sunbelt Exploration, Inc. ("Sunbelt"). SWGP responded with its First Amended Original Answer, in which SWGP asserted the three affirmative defenses which are the subject of this appeal. Each of these affirmative defenses was presented to the trial court in a Motion or Cross–Motion for Summary Judgment, and the court ruled in favor of the plaintiffs and against SWGP on all three issues. The remaining issues where tried before the court, which found for the plaintiffs. Damages were assessed at $323,503.22, plus interest through September 3, 1992 of $174,991.55, and post-judgment interest and attorney's fees.

In a summary judgment case, the issue on appeal is whether the movant met his burden for summary judgment by establishing that there exists no genuine issue of material fact and that he is entitled to judgment as a matter of law. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979); TEX.R.CIV.P. 166a. The burden of proof is on the movant, and all doubts as to the existence of a genuine issue of material fact are resolved against him. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence in the light most favorable to the non-movant. *See id.* In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the non-movant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Montgomery,* 669 S.W.2d at 311. Evidence which favors the movant's position will not be considered unless it is uncontroverted. *Great American,* 391 S.W.2d at 47. If such uncontroverted evidence is from an interested witness, it cannot be considered as doing more than raising a fact issue, unless it is clear, direct, positive, and free from inconsistencies and contradictions. *Id.; Americana Motel, Inc. v. Johnson,* 610 S.W.2d 143 (Tex.

1980) (per curiam) (affirming a summary judgment based solely upon the uncontroverted testimony of an interested party). The summary judgment will be affirmed only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston,* 589 S.W.2d at 678.

Paragraph V(a), the take-or-pay provision of the three agreements, has the following common language:

> [S]ubject to *other provisions of this Agreement,* Seller agrees to sell and deliver to Buyer [SWGP] from Seller's Gas Reserves, and Buyer agrees to purchase and receive, or pay for if available and not taken, during each Contract Year for the term hereof from each of the Seller's wells respectively, a quantity of gas from each of Seller's wells equal to [____] Mcf per day or [_____] percent [(__%)] of Seller's Delivery Capacity, averaged over the Contract Year, whichever is less.... [Emphasis added.]

This paragraph of the three agreements differs only in the minimum quantity of gas to be purchased. Gas Purchase Agreement 374 requires 300 mcf or seventy percent (70%), Gas Purchase Agreement 444 requires 300 mcf or fifty percent (50%), and Gas Purchase Agreement 611/1188 requires 500 mcf or fifty percent (50%).

■ SWGP's first two points of error relate to two of the "other provisions of this Agreement" referenced in paragraph V(a), the unprofitability provision in paragraph V(l), and the notice provision in paragraph V(g). Neither the plaintiffs nor SWGP have pleaded that the contract language is ambiguous. Thus, the interpretation of this language is a question of law for the court. *Brown v. Payne,* 142 Tex. 102, 176 S.W.2d 306, 308 (1943). In interpreting an unambiguous agreement, the court must look to the written instrument alone to determine the legal rights, and to give effect to the objective intent, of the parties. *Smith v. Liddell,* 367 S.W.2d 662, 666 (Tex.1963). To make this determination, the court must examine and consider the entire writing in an effort to harmonize and give effect to all of the provisions of the contract so that none will be

rendered meaningless. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983). No single provision taken alone will be given controlling effect; rather, all of the provisions must be considered with reference to the whole instrument. *Id.* However, the court is not at liberty to revise an agreement while professing to construe it. *General American Indemnity Co. v. Pepper,* 161 Tex. 263, 339 S.W.2d 660, 661 (1960). Keeping these principles in mind, we now turn to the two provisions asserted by SWGP as affirmative defenses.

■ In its first point of error, SWGP argues that the trial court erred in granting the Plaintiff's Motion for Summary Judgment on the issue of unprofitability and in denying SWGP's Cross–Motion for Summary Judgment on that issue. That provision is contained in paragraph V(l), which states that:

> In the event that the purchase of gas from any delivery point(s) under this Agreement is or becomes unprofitable, Buyer shall not be obligated to purchase, take or pay for such gas; and Buyer may cease purchasing, taking, or paying for such gas as long as such condition exists. If Buyer discontinues the connection of any such delivery point(s) for a period of ninety 90 days, Buyer shall upon written request from Seller release the well(s) and the acreage attributable thereto from this Agreement.

SWGP argues that the first and second sentences of paragraph V(l) stand alone as separate, though related, conditions: The first sentence, in essence, says that if the purchase of any gas becomes unprofitable, then SWGP is not obligated to take-or-pay for that gas. The second sentence is a separate condition which says that if SWGP discontinues the connection for ninety days, then upon written request SWGP shall release the wells. Plaintiffs seek to integrate the sentences into a two-pronged condition with two results. In plaintiffs' view, paragraph V(l) says that if the purchase of gas becomes unprofitable *and* if the buyer discontinues connection for ninety days, then SWGP is not obligated to pay *and* SWGP shall upon written request release the wells. Plaintiffs argue that the take-or-pay provi-

sion in paragraph V(a) can be harmonized with the unprofitability provision of paragraph V(*l*) only if the unprofitability provision is read in light of the language regarding disconnection of the wells. In our view, plaintiffs are asking the court to add words into the provision that are not fairly implied. We believe that the provisions can be harmonized without revising the agreement. The take-or-pay provision of paragraph V(a) is expressly made "subject to the other provisions of this Agreement." The unprofitability provision of paragraph V(*l*) expressly refers to the take-or-pay provision, thus establishing the conditional relationship. This does not render the take-or-pay clause meaningless, as plaintiffs contend, but simply creates the possibility that the obligation would be excused if the condition is met.

Here SWGP asserts that it purchased gas each month in quantities which it could sell for a profit, but did not buy additional quantities to reach the minimum, because it would have been unprofitable to do so. It is a fact of life that the price of gas fluctuates on the spot market. SWGP apparently had some long-term cost-plus sales contracts, and bought gas in quantities to satisfy those commitments. At the same time, the price of gas on the spot market dropped below the purchase price of the agreement, cutting off any profitable market for the remaining commitment. Judging from the language of the contracts, SWGP sought to limit its risk in just such an event with the unprofitability clause. Another part of the contract allowed for the upward adjustment of the purchase price if the market value of the gas went up, thus limiting the risk to the seller. The second sentence of paragraph V(*l*) is not rendered meaningless by this construction. If SWGP had purchased no gas for ninety days, this might (though the question is not before us) be construed as a "discontinuance of connection" triggering the second provision of paragraph V(*l*). Certainly a physical disconnection would trigger the provision. The plain language of the provision supports this interpretation. If the plaintiffs' interpretation was in fact the intent of the parties, it would have been a simple matter to join the two sentences into one condition. The question of whether the provision is fair is not before us. We hold that the trial court erred in granting plaintiff's motion for summary judgment on the issue of unprofitability because, as a matter of law, unprofitability is a viable defense.

The remaining question on this point is whether SWGP's motion for summary judgment should be granted, or whether a genuine issue of material fact regarding unprofitability remains for the trial court. The term "unprofitable" is not defined in the contract. Plaintiffs cite us to cases which define the profitability of a gas well, from the standpoint of the mineral interest holder and working interest holder/producer. However, the question here is profitability from the standpoint of SWGP, the pipeline purchaser. We find no cases construing "profitability" in this context, and SWGP offers no definition in its brief. A general definition of profit is "the gross proceeds of a business transaction less the costs of the transaction." BLACK'S LAW DICTIONARY 1090 (5th ed. 1979). This definition is consistent with the test for determining a well's profitability, which is whether the production yields a profit after deducting expenses. *See Ballanfonte v. Kimbell*, 373 S.W.2d 119, 120–21 (Tex.Civ. App.—Fort Worth 1963, writ ref'd n.r.e.).

■ We hold that the test for determining whether it is profitable for a gas pipeline company to purchase gas from a producer, absent a specific contract provision, is whether the gas may be sold by the pipeline company at a price higher than the sum of the purchase price of the gas from the producer, and transport and processing costs incurred from the specific wellhead delivery point to the end of the pipeline where the gas is sold. This test will necessitate fact findings on the cost of transporting and processing the gas, the spot market price for gas during the applicable periods, and the existence of cost-plus or fixed price sales contracts held by the pipeline company.

■ Here, the only summary judgment evidence offered by SWGP was the affidavit of Dan James, SWGP's director of gas sales and transportation. This evidence did not address the cost of transport from the various wellhead delivery points. It only stated

that the spot market price was lower than the contracted purchase price of the Agreements, and that SWGP did not have sufficient cost-plus sales contracts to justify the purchase of the full minimum quantity of gas mandated under the Agreements. Plaintiffs' summary judgment evidence includes the SWGP 1985 annual report, which documents the purchase of gas from other sources, including SWGP's parent company, at a price higher than the price under the Agreements. Thus, SWGP's summary judgment evidence was controverted. We hold that the summary judgment proof does not dispose of the genuine issue of material fact on profitability. We thus reverse the summary judgment in favor of the plaintiffs and remand the case to the trial court for a factual determination of profitability.

In its second point of error, SWGP argues that the trial court erred in denying its Motion for Summary Judgment on the issue of notice and in granting the plaintiffs' Motion for Summary Judgment on that issue. SWGP asserts that the notice provision is an affirmative defense to the obligation for payment of gas not taken for the months of September through December 1984 for all of the wells in question, and in addition, for the months of January and February 1985 for the Gill Heirs and Withers No. 1 wells. Plaintiff Sunbelt Exploration sent a notice letter to SWGP specifically referencing paragraph V(g) on February 20, 1985 for all wells except Gill Heirs and Withers No. 1. This letter notified SWGP of a deficiency for September through December 1984. Another letter was sent by Sunbelt to SWGP on April 2, 1985 giving notification of deficiency from September 1984 through February 1985.

■ The second paragraph in V(g) reads as follows:

Notwithstanding any provisions of this paragraph (g), Buyer will not be in default hereunder and shall not be liable to Seller for gas required to be paid for which is not actually taken from a well, after deliveries of gas from such well have actually commenced, except for a period commencing on the first day of the calendar month preceding the month in which Buyer receives written notice from Seller that Buy-

er has not taken gas during any period of such particular year at a rate which if continued during the remainder of such year would comply with the provisions of subparagraph (a) of this Article V.

SWGP asserts that the plain language of paragraph V(g) requires that the sellers give written notice of a deficiency no later than the last day of the month following the month in question, and that the failure to give such notice waives the ability of the seller to enforce the take-or-pay provision for that month. Plaintiffs argue that SWGP's construction of paragraph V(g) gives greater importance to the notice provision than to the take-or-pay provision of paragraph V(a), and that the second paragraph of V(g) cannot be reconciled with V(a). We disagree. Paragraph V(g) is simply a condition precedent to the buyer's liability under the take-or-pay clause. So long as the seller gives timely notice, the take-or-pay obligation of buyer may be enforced. In this case, the plaintiffs did in fact give notice which was effective for the month of January 1985 for all wells except Gill Heirs and Withers No. 1, which notice was effective for March 1985.

Plaintiffs further argue that there is no rate at which the buyer must take throughout the contract year, and that paragraph V(g) is thus internally inconsistent with paragraph V(a). This is true in the sense that there is no immediate breach if a minimum quantity is not purchased in any given month. However, it is easy enough to ascertain the yearly minimum, determine the amount yet to be purchased to reach that minimum, and to divide that result by the number of months remaining in the year to arrive at the monthly rate referenced in paragraph V(g). That plaintiffs did in fact make such calculations and give such notice, albeit too late to recover for part of the year, only proves the point.

Plaintiffs further argue that paragraph V(g) does not have conditional language, and should be interpreted as a covenant to avoid a forfeiture of the take-or-pay obligation. Again we must disagree. Plaintiffs in their Response to Defendant's Motion for Partial Summary Judgment admit that "[t]here is no question that the language purports to estab-

lish a 'condition precedent' to the buyer's liability." We believe that the language of paragraph V(g) clearly shows an intent to create a condition precedent. It is true that SWGP independently possessed the same information as given in the required notice, and that the required notice thus has no reasonable function. Plaintiffs should have argued those points during the contract negotiations. Having signed an agreement which unambiguously requires notice, and clearly sets out the consequences of the failure to give notice, plaintiffs are bound to live with those consequences. Point of error two is sustained, the summary judgment on the issue of notice is reversed, summary judgment for SWGP is rendered on the issue of notice, and the trial court is instructed to limit any damages found on remand to those months for which notice was properly given.

In its third point of error, SWGP argues that the trial court erred in denying its Motion for Summary Judgment on the issue of limitations, and in granting judgment in favor of Sunbelt Exploration, because Sunbelt's claim was barred by the four-year statute of limitations. As previously noted, Sunbelt's cause of action accrued on November 30, 1985. The four-year statute of limitations would have run on November 30, 1989. Sunbelt was first added as a plaintiff in the First Amended Original Petition filed on January 26, 1990. However, Sunbelt had filed a Chapter 11 bankruptcy petition on January 20, 1989. The trial court was apprised of the pendency of the bankruptcy proceeding. Sunbelt argues that the statute of limitations was tolled pursuant to section 108 of the Bankruptcy Code:

> (a) If applicable nonbankruptcy law ... fixes a period within which the debtor may commence an action, and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) two years after the order for relief.

11 U.S.C.A. § 108(a) (West 1993). Debtors-in-possession are also entitled to rely on this provision. *Besing v. Seeligson, Douglass, et al,* 822 S.W.2d 107, 109 (Tex.App.—Dallas 1991, writ denied); *United States for the Use of American Bank v. C.I.T. Const., Inc. of Texas,* 944 F.2d 253, 259–60 (5th Cir.1991). An appellate court may take judicial notice of a pending bankruptcy case even though the trial court was not requested to do so, and even though the trial court did not announce that it had done so. *Int'l Ass'n of Fire Fighters Local 624 v. San Antonio,* 822 S.W.2d 122, 127 (Tex.App.—San Antonio 1991, writ denied) (opinion on reh'g). We may also presume that the trial court took judicial notice without any request being made and without any announcement that it had taken judicial notice. *Marble Slab Creamery, Inc. v. WESIC, Inc.,* 823 S.W.2d 436, 439 (Tex.App.—Houston [14th Dist.] 1992, no writ). We hold that the trial court took judicial notice of Sunbelt's pending Chapter 11 bankruptcy case, and properly refused to bar Sunbelt from asserting its cause of action due to SWGP's limitations affirmative defense. Point of error three is overruled.

We affirm that portion of the judgment of the trial court which denies summary judgment to SWGP on the issue of limitations regarding Sunbelt Exploration, Inc. The remainder of the trial court's judgment is reversed. Judgment is rendered in favor of SWGP on its affirmative defense of notice. The case is remanded to the trial court for a factual determination of unprofitability as an affirmative defense to damages, and for the reduction of any damages found, due to the failure to give timely notice of purchase deficiency. Costs are assessed against appellees.