02-09-308-CV









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00308-CV

 

 


 
 
 Pineridge Associates, L.P. and LAC Properties
 Operating Partnership, L.P.
 
 
  
 
 
 APPELLANTS
 
 
 
 
  
 V.
  
 
 
 
 
 Ridgepine, LLC
 
 
  
 
 
 APPELLEE
 
 


 

 

----------

 

FROM THE 342nd
District Court OF Tarrant COUNTY

----------

 

OPINION

----------

 

I. 
Introduction

          Appellants
Pineridge Associates, L.P. and LAC Properties Operating Partnership, L.P. (collectively,
Appellants)[1] appeal the trial court’s
judgment in favor of Appellee Ridgepine, L.L.C. (Ridgepine) following a bench
trial.  Appellants contend in nine issues that the trial court erred by
incorrectly interpreting a note and deed of trust, by finding that an event of
default triggered Appellants’ personal liability for a deficiency on the note
and deed of trust, by finding that a deficiency existed, and by awarding
attorney’s fees to Ridgepine.  We affirm.

II. 
Background

A. 
The Note, Deed of Trust, and Default

          The
dispute in this case concerns the mortgage for an apartment complex in
Arlington, Texas, known as the Pineridge Apartments (the Property). Pineridge
executed a Multi-Family Note (Note) on June 11, 2001, in the original principal
amount of $2,700,000.  The Note was secured by a Multi-Family Deed of Trust,
Assignment of Rents, Security Agreement and Fixture Filing (Deed of Trust).[2]
 That same day, the Pineridge Mortgage was assigned to Federal Home Loan
Corporation (Freddie Mac).  In 2003, Freddie Mac consented to the replacement of
Pineridge’s operating general partner through a reaffirmation of the Pineridge
Mortgage, and LAC Properties executed a limited guaranty in connection with the
reaffirmation.

          Pineridge
defaulted on the Pineridge Mortgage on January 1, 2007, by failing to pay the
December 2006 installments of principal and interest.  In addition, Pineridge’s
financial difficulties led to the filing of approximately $127,000 in
mechanic’s liens against the Property between August 2006 and May 2007.

          In
April 2007, Ridgepine paid Freddie Mac $2,500,000 to purchase the Pineridge
Mortgage, and Freddie Mac assigned the Pineridge Mortgage to Ridgepine. 
Ridgepine then filed suit against Pineridge on May 1, 2007, seeking a temporary
restraining order and the appointment of a receiver pending Ridgepine’s attempt
to sell the Property at foreclosure.[3]  Ridgepine then
foreclosed on the Property and placed the highest bid for the
property—$2,752,827.50—at the June 5, 2007 foreclosure sale.

B. 
Nonrecourse Loan with Exceptions Creating Personal Liability

          The
Note and Deed of Trust was a nonrecourse loan with limited exceptions that, if
applicable, made Appellants personally liable for any deficiency.  In this
regard, Paragraph 9(a) of the Note stated:

Except as otherwise
provided in this Paragraph 9, [Appellants] shall have no personal liability
under this Note, the Security Instrument or any other Loan Document for the
repayment of the Indebtedness or for the performance of any other obligations
of [Appellants] under the Loan Documents, and [Ridgepine]’s only recourse for
the satisfaction of the Indebtedness and the performance of such obligations
shall be [Ridgepine]’s exercise of its rights and remedies with respect to the
Mortgaged Property and any other collateral held by [Ridgepine] as security for
the Indebtedness. 

 

Relevant
to this appeal, Paragraph 9(e) provided:

[Appellants] shall
become personally liable to [Ridgepine] for the repayment of all of the
Indebtedness upon the occurrence of any of the following Events of Default:  .
. . (2) a Transfer (including, but not limited to, a lien or encumbrance) that
is an Event of Default under Section 21 of the [Deed of Trust].

 

Section
21(a) of the Deed of Trust in turn defined an “Event of Default” as, among
other things, “a transfer of all or any part of the Mortgaged Property or any
interest in the Mortgaged Property.”  However, the Deed of Trust excepted
certain transfers and, in Section 21(b), specifically stated:

The occurrence of any
of the following events shall not constitute an Event of Default under this
Instrument, notwithstanding any provision of Section 21(a) to the contrary:

 

. . . . 

 

(6)  the creation of
a mechanic’s, materialman’s, or judgment lien against the Mortgaged Property
which is released of record or otherwise remedied to [Ridgepine]’s
satisfaction within 30 days of the date of creation. [Emphasis added.]

 

Ridgepine’s
third amended petition alleged personal liability against Appellants for the
deficiency because the mechanic’s liens were not “released of record or
otherwise remedied to [Ridgepine]’s satisfaction within 30 days of the date of
creation.”  Appellants defended the personal liability claim at trial by
arguing that the foreclosure sale extinguished all mechanic’s liens, that the
mechanic’s liens were therefore “released of record,” and that Ridgepine was
prohibited from seeking personal liability because it had not invoked the Event
of Default relating to the mechanic’s liens “during the existence of [the]
Event of Default.”[4]

C. 
Trial Court’s Findings of Fact, Conclusions of Law, and Judgment

          Following
a bench trial, the trial court signed a judgment in favor of Ridgepine and
against Appellants for $146,615.40 and attorney’s fees.  The trial court also
made findings of fact and conclusions of law.  Among other things, the trial
court found that:  (1)  Pineridge defaulted under the Note and Deed of Trust;
(2) there was a deficiency of $146,615.40 following the foreclosure sale; (3)
Pineridge “allowed numerous mechanic’s liens to be placed on the Property prior
to the foreclosure of the Property”; (4) the mechanic’s liens “were not
released of record or otherwise remedied to [Ridgepine’s] satisfaction within
30 days of the date of creation as required by the Deed of Trust”; and (5) Appellants
“are personally liable to [Ridgepine] in the amount of the deficiency after
foreclosure of $146,615.40.”  In addition, the trial court made a conclusion of
law that “mechanic’s liens are not automatically released of record after a
foreclosure.”  This appeal followed.

III. 
Event of Default

          In
their first five issues, Appellants contend that the trial court erred by
incorrectly interpreting the Note and Deed of Trust, by finding that the
mechanic’s liens were not released of record by virtue of the foreclosure sale,
by finding them personally liable for the deficiency, and by entering judgment
against them. Because they are related, we address Appellants’ first five
issues together.

A. 
Standard of Review

The
construction of an unambiguous contract is a question of law for the court to
determine de novo.  Chrysler Ins. Co. v. Greenspoint Dodge of Houston, Inc.,
297 S.W.3d 248, 252 (Tex. 2009).  We examine the entire document and consider
each part with every other part so that the effect and meaning of one part on
any other part may be determined.  Heritage Res., Inc. v. NationsBank,
939 S.W.2d 118, 121 (Tex. 1996).  We interpret the contract by ascertaining the
true objective intentions of the parties, based on the contract language, and
presuming that the parties intended every clause to have some effect.  SAS
Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005); Heritage
Res., Inc., 939 S.W.2d at 121.  We give words their plain, common, or
generally accepted meaning unless the instrument shows that the parties used
them in a technical or different sense.  Heritage Res., Inc., 939 S.W.2d
at 121.

B.  Recourse
and Nonrecourse Loans Distinguished

          A
recourse loan “allows the lender, if the borrower defaults, not only to attach
the collateral but also to seek judgment against the borrower’s (or
guarantor’s) personal assets.”  Black’s Law Dictionary 1021 (9th ed. 2009).  Conversely,
the maker of a nonrecourse loan “does not personally guarantee repayment of the
note and will, thus, have no personal liability.”  Fein v. R.P.H., Inc.,
68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).  “A
nonrecourse note has the effect of making a note payable out of a particular
fund or source, namely, the proceeds of the sale of the collateral securing the
note.”  Id. (citing Burns v. Resolution Trust Corp., 880 S.W.2d
149, 153 (Tex. App.—Houston [14th Dist.] 1994, no writ) and Hinckley v.
Eggers, 587 S.W.2d 448, 450 (Tex. Civ. App.—Dallas 1979, writ ref’d
n.r.e.)).  In other words, under a true nonrecourse loan, the borrower has no
personal liability beyond the loss of the collateral securing the note.  Id.
 The Deed of Trust involved in this case is a nonrecourse loan with several
exceptions that, if applicable, allow Ridgepine to seek personal liability
against Appellants.

C.  Analysis

          Section
43 of the Deed of Trust provided that Ridgepine could “invoke the power of sale
and any other remedies permitted by Texas law” or the Deed of Trust “[a]t any
time during the existence of an Event of Default.”  Relevant to this appeal, and
as previously noted, one Event of Default triggering personal liability under
section 21(b) of the Deed of Trust is a mechanic’s lien that was not “released
of record or otherwise remedied to Lender’s satisfaction within 30 days of the
date of creation.”  The question presented is whether the mechanic’s liens were
“released of record” when they were extinguished by the June 2007 foreclosure
sale.  If the mechanic’s liens were released of record by the foreclosure sale,
then Appellants can have no personal liability under the Deed of Trust because
the mechanic’s liens were “released of record” before Ridgepine invoked them as
an Event of Default.

          1. 
Foreclosure Sale Did Not Release Liens “Of Record”

          The
parties do not dispute that the mechanic’s liens were extinguished by the
foreclosure sale or that they were thereafter unenforceable as a matter of
law.  See Diversified Mortg. Investors v. Lloyd D. Blaylock Gen. Contractor,
Inc., 576 S.W.2d 794, 806 (Tex. 1978) (“[T]he foreclosure sale of the
senior lien extinguishe[s] the junior lien.”); Conseco Fin. Servicing Corp.
v. J & J Mobile Homes, Inc., 120 S.W.3d 878, 883 (Tex. App.—Fort Worth
2003, pet. denied) (“Following the valid foreclosure of a senior lien, junior
liens, if not satisfied from the proceeds of sale, are extinguished.”).  The
parties do dispute, however, whether the extinguishment of a mechanic’s lien
via a foreclosure sale is synonymous with the mechanic’s lien being “released of
record.”

          Appellants
argue that the mechanic’s liens were released of record when they were
extinguished by the June 2007 foreclosure sale, but they offer no authority
supporting the argument.  Rather, they assume that “extinguished” and “released
of record” are synonymous.  We disagree, and in doing so, we refer to property
code section 53.157, the Texas Title Examination Standards, the common legal
meaning of “of record,” and the specific language the parties used in the Deed
of Trust.

First,
property code section 53.157 lists six ways that a mechanic’s lien “may be
discharged of record.”[5]  Tex. Prop. Code Ann. §
53.157 (Vernon 2007).  One way is to file a lien release; four others require
filing a bond or other document in the county deed records.  See id. §
53.157(1), (3)–(6).  The sixth way a mechanic’s lien may be discharged of
record—and the only way to do it under section 53.157 without filing a document
in the county deed records—is by failing to initiate suit to foreclose the lien
within the applicable statute of limitations.  See id. § 53.157(2). 
Appellants argue that the extinguishment of the mechanic’s liens by foreclosure
sale is analogous to this latter provision.  See id.  But while neither
the extinguishment of a junior lien through foreclosure nor the failure to file
suit within the statute of limitations requires the filing of a document
reflecting the unenforceability of the lien, the legislature chose not to
include extinguishment through foreclosure in section 53.157.  See City of
Roanoke v. Town of Westlake, 111 S.W.3d 617, 636 (Tex. App.—Fort Worth
2003, pet. denied) (“We must presume that the legislature chose its words
carefully, recognizing that every word in a statute was included for some
purpose and that every word excluded was omitted for a purpose.”).  And as noted
in Appellants’ brief, the rule that foreclosure extinguishes junior liens has
been part of Texas law since at least 1890.  Applying the relevant rules of
statutory construction, we must presume that the legislature was aware of this
well-established rule and chose not to include the extinguishment rule in the
statutory list.  See id.; see also Playoff Corp. v. Blackwell,
300 S.W.3d 451, 458 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh’g) (“Contracts
are presumed to incorporate regulations and laws existing at the time of
execution.).  Thus, we are not persuaded that the extinguishment of a
mechanic’s lien through foreclosure is equivalent to a lien that has been
“discharged of record” by failing to file suit within the applicable statute of
limitations.

          Moreover,
“of record” has a commonly understood legal meaning.  See Exxon Corp. v.
Emerald Oil & Gas Co., L.C., No. 05-1076, 2010 WL 5133461, at *12 (Tex.
Dec. 17, 2010) (“It is a well recognized canon of construction that technical
words are to be interpreted as usually understood by persons in the business to
which they relate, unless there is evidence that the words were used in a
different sense.”).  Black’s Law Dictionary defines “of record” to mean
“recorded in the appropriate records.”  Black’s Law Dictionary 1196 (9th ed.
2009).  In addition, Texas courts have long used the terms “of record” or “for
record” to denote that a document has been made a part of the public record by
filing the document in the appropriate place.[6]  See Keel v. Hoggard,
590 S.W.2d 939, 941 (Tex. Civ. App.—Waco 1979, no writ) (noting that a release
of lien “was filed for record”); Pereira v. Gulf Elec. Co., 343 S.W.2d
334, 335 (Tex. Civ. App.—Waco 1960, writ ref’d n.r.e.) (noting both that a deed
and lien were filed “for record” and that money from the sale of property was
held in escrow until a lien “could be released of record by judgment or
payment”); Stewart Abstract Co. v. Judicial Comm’n of Jefferson Cnty.,
131 S.W.2d 686, 688 (Tex. Civ. App.—Beaumont 1939, no writ) (quoting from title
opinion admitted into evidence, which referred to a plat being “of record in
the office of the County Clerk” and to a release having been “not released of
record” even though it was barred by limitations); Tippit v. Nettleton,
100 S.W.2d 409, 410 (Tex. Civ. App.—El Paso 1936, no writ) (reciting the
plaintiff’s contention that “various liens [were] shown of record and not
released of record”).  The commonly understood meaning of “of record” thus
suggests that the extinguishment of the mechanic’s liens via foreclosure is not
synonymous with releasing the liens “of record.”

          Appellants
cite the Texas Title Examination Standards and argue that a lien can be
released of record even when a document has not been filed to reflect the
release.  See Tex. Prop. Code Ann. Tit. 2, App., Standard 1.10 (Vernon Supp.
2010) (providing that a title opinion “should advise an examiner’s client of
all irregularities, defects, and encumbrances . . . that may expose the owner
to litigation or adverse claims[,] even if the litigation or adverse claims can
reasonably be expected to be successfully defended”); id., Standard
15.10 (Vernon Supp. 2010) (providing that a title examiner “need not identify a
lien that is barred by limitations or is otherwise unenforceable”).  However,
the title examination standards are not statutory law.  See id.,
Preface.  Rather, they are a “collective consensus” of attorney members of the
Real Estate; Probate and Trust Law; and Oil, Gas, and Energy Resources sections
of the State Bar of Texas.  See id., Disclaimer and Introduction. 
Moreover, while Standard 15.10 provides that a title examiner “need not
identify a lien that is barred by limitations or is otherwise unenforceable,”
the standard does not resolve or even address the specific issue presented
here—whether the mechanic’s liens were “released of record” when they were
rendered unenforceable by the foreclosure sale.  See id., Standard
15.10.  The standard addresses only what a prudent title examiner should, in
the opinion of certain practitioners, include in a title opinion.  See id.

          Finally,
looking to the specific contractual language, the Deed of Trust excludes a
mechanic’s lien from the definition of an Event of Default only if the lien was
“released of record or otherwise remedied to Lender’s satisfaction within 30
days of the date of creation.”  Although the extinguishment through foreclosure
rendered the mechanic’s liens unenforceable, the Deed of Trust does not exclude
from an Event of Default liens that have been extinguished or otherwise rendered
unenforceable.  Rather, the parties chose to limit the lien exclusion to only
those liens that were “released of record or otherwise remedied to Lender’s
satisfaction.”  Thus, even though the extinguishment through foreclosure
rendered the mechanic’s liens unenforceable, the contract language does not
support Appellants’ contention that extinguishing the mechanic’s liens through
the foreclosure sale is synonymous with the liens being released of record.[7] 
See, e.g., Calpine Producer Servs., L.P. v. Wiser Oil Co., 169
S.W.3d 783, 791 (Tex. App.—Dallas 2005, no pet.) (rejecting interpretation of
contract because doing otherwise “would require [the court] to inject meaning
not expressed in the words chosen by the parties and placed within the four
corners of the agreement”).  Because the Deed of Trust language does not exempt
from an Event of Default permitting personal liability any mechanic’s liens
that have been rendered unenforceable, we are not persuaded that the
extinguishment of a mechanic’s lien through foreclosure is synonymous with
releasing the lien of record.  We hold that the mechanic’s liens were not
automatically released of record when they were extinguished through the
foreclosure sale.[8]

          2. 
Ridgepine Invoked Liens During Existence of Default

          Having
held that the mechanic’s liens were not automatically released of record when
they were extinguished through the foreclosure sale, we next determine whether
Ridgepine invoked the mechanic’s liens as a basis for personal liability during
the existence of the Event of Default.

The
mechanic’s liens were filed against the Property between August 2006 and May
2007, and the June 2007 foreclosure sale rendered the mechanic’s liens
unenforceable.  See Diversified, 576 S.W.2d at 806.  Ridgepine knew
about the mechanic’s liens when it purchased the Pineridge Mortgage from
Freddie Mac, but Ridgepine did not seek personal liability based on the
mechanic’s liens in its May 2007 original petition.  Appellants argue that
Ridgepine could have invoked the mechanic’s liens as an Event of Default prior
to the foreclosure sale and that after the foreclosure sale, the mechanic’s
liens no longer qualified as an Event of Default because they were extinguished
and no longer existed.  But their argument is again premised on the incorrect
assumption that the mechanic’s liens were “released of record” when they were
extinguished in the foreclosure sale.  As we held above, the foreclosure sale
did not release the mechanic’s liens of record, even though the foreclosure
sale rendered the liens unenforceable.  Furthermore, Appellants could have
discharged the liens of record, and therefore precluded Ridgepine from
successfully claiming personal liability against them, by filing a bond
pursuant to property code section 53.171.  See Tex. Prop. Code Ann. §§
53.171–.175 (Vernon 2007) (permitting “any person” to file a bond indemnifying
against a mechanic’s lien); see also id. § 53.157(4) (providing
that the filing of a bond pursuant to section 53.171 discharges the lien “of
record”).

The
Deed of Trust excludes mechanic’s liens from the definition of an Event of
Default only if the mechanic’s liens are “released of record or otherwise
remedied to Lender’s satisfaction.”[9]  In its April 2008
amended petition, Ridgepine invoked the mechanic’s liens as an Event of Default
permitting personal liability against Appellants.  It is undisputed that lien
releases were never filed.  Because lien releases were never filed, the failure
to release the mechanic’s liens of record means the mechanic’s liens continued
to qualify as an Event of Default as of April 2008, and Ridgepine invoked the
mechanic’s liens as an Event of Default “during the existence of an Event of
Default.”  We therefore hold that Ridgepine invoked the mechanic’s liens as an
Event of Default during the existence of the default, permitting personal
liability against Appellants.  We overrule Appellants’ first five issues.

IV. 
Sufficient Evidence of Amount of Deficiency

          Appellants
assert in their sixth and seventh issues that the evidence is legally
insufficient to support the trial court’s findings that a deficiency exists and
that the deficiency is $146,615.40.

A. 
Standard of Review

          Findings
of fact entered in a case tried to the court have the same force and dignity as
a jury’s answers to jury questions.  Anderson v. City of Seven Points,
806 S.W.2d 791, 794 (Tex. 1991).  The trial court=s
findings of fact are reviewable for legal and factual sufficiency of the
evidence to support them by the same standards that are applied in reviewing
evidence supporting a jury=s answer.  Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996); Catalina v. Blasdel, 881
S.W.2d 295, 297 (Tex. 1994).

          We
may sustain a legal sufficiency challenge only when (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules
of law or of evidence from giving weight to the only evidence offered to prove
a vital fact; (3) the evidence offered to prove a vital fact is no more than a
mere scintilla; or (4) the evidence establishes conclusively the opposite of a
vital fact.  Uniroyal Goodrich Tire Co. v. Martinez, 977 S.W.2d 328, 334
(Tex. 1998), cert. denied, 526 U.S. 1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error, 38
Tex. L. Rev. 361, 362–63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  Cent. Ready Mix Concrete Co. v. Islas, 228 S.W.3d 649, 651 (Tex.
2007); City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005).

Anything
more than a scintilla of evidence is legally sufficient to support the
finding.  Cont’l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex.
1996); Leitch v. Hornsby, 935 S.W.2d 114, 118 (Tex. 1996).  When the
evidence offered to prove a vital fact is so weak as to do no more than create
a mere surmise or suspicion of its existence, the evidence is no more than a
scintilla and, in legal effect, is no evidence.  Kindred v. Con/Chem, Inc.,
650 S.W.2d 61, 63 (Tex. 1983).  More than a scintilla of evidence exists if the
evidence furnishes some reasonable basis for differing conclusions by
reasonable minds about the existence of a vital fact.  Rocor Int‘l, Inc. v.
Nat’l Union Fire Ins. Co., 77 S.W.3d 253, 262 (Tex. 2002).

B. 
Analysis

          Appellants
challenge four components of the trial court’s deficiency
calculation—prepayment premium, legal fees, prorated property taxes, and
compound interest—and argue that because no evidence supports each of those
four components, there is no resulting deficiency.  We address each component
in turn.

          1. 
Prepayment Premium

          Section
10(a)(2) of the Note required Appellants to pay Ridgepine the entire
outstanding unpaid principal balance, all accrued interest, and a prepayment
premium.  Section 10(c)(1) of the Note sets forth the calculation of the
prepayment premium.  Part of the prepayment premium calculation requires the
input of an “assumed reinvestment rate,” which is, for purposes of this case,
one-twelfth of the yield rate for a “non-callable Treasury Security” maturing
in 2011 “with the lowest yield published in The Wall Street Journal as
of the applicable date.”  Appellants do not dispute that the applicable date is
May 29, 2007.  Rather, Appellants argue that Ridgepine “relied upon a T-bill
yield rate which was published in the Wall Street Journal on May 29,
2007, rather than the May 29, 2007 rate which would have been published on May
30, 2007,” meaning there is no evidence of the proper calculation of the
prepayment premium.  However, the trial exhibit containing the yield rate was
obtained from the Wall Street Journal’s website and contains a statement
that the May 29, 2007 rates “are from midafternoon.”  Moreover, the trial
exhibit has a footer indicating that it was printed on May 30, 2007, suggesting
that it was indeed the May 29, 2007 rate published on May 30, 2007.  There is
more than a scintilla of evidence that Ridgepine relied on the correct yield
rate when calculating the prepayment premium.

          2. 
Legal Fees

          The
trial court’s deficiency finding includes $35,000 in legal fees.  Appellants
argue that there is no evidence to support $35,000 in legal fees because
Ridgepine’s representative, Kevan Acord, admitted the $35,000 amount was an
estimate made before the foreclosure sale and “testified at trial to multiple
different figures for actual fees that were incurred.”  They further argue that
Ridgepine cannot recover fees incurred before it purchased the Note or after
foreclosure and that Ridgepine offered no evidence that the fees it incurred
were reasonable and necessary.

Section
11 of the Note states: 

Costs and Expenses.  To the fullest
extent allowed by applicable law, [Appellants] shall pay all expenses and
costs, including fees and out-of-pocket expenses of attorneys (including
[Ridgepine]’s in-house attorney’s) and expert witnesses and costs of
investigation, incurred by [Ridgepine] as a result of any default under this
Note or in connection with efforts to collect any amount due under this Note,
or to enforce the provisions of any of the other Loan Documents, including
those incurred in post-judgment collection efforts and in any bankruptcy
proceeding (including any action for relief from the automatic stay of any
bankruptcy proceeding) or judicial or non-judicial foreclosure proceeding.

 

Ridgepine
argues that it offered legally sufficient evidence to support the $35,000 in
legal fees because Acord testified that the legal fees actually exceeded
$44,000, the Note does not limit its ability to recover legal fees incurred
before purchasing the note or after foreclosure, and the Note does not require
evidence that the legal fees are reasonable and necessary.

          We
agree with Ridgepine.  The Note permits recovery of all legal fees incurred and
does not require proof that the legal fees were reasonable and necessary, nor
does the Note prevent Ridgepine from recovering legal fees incurred before
purchasing the Note or after foreclosure, so long as they were incurred “as a
result of any default,” “in connection with efforts to collect any amount due,”
or “to enforce the provisions of” the other loan documents.  And contrary to
Appellants’ contention, Acord did not agree during his trial testimony that
Ridgepine could not recover legal fees incurred before purchasing the Note or
after the foreclosure sale.  Rather, he testified that all of the legal fees
Ridgepine incurred were in furtherance of foreclosure and collection of the
debt.  Moreover, although Acord testified that Ridgepine incurred more than
$44,000 in legal fees, he also testified about the $35,000 amount used to
calculate the deficiency, and $15,000 and $25,000 in fees charged by his and
another law firm.  Thus, the trial court’s finding of $35,000 in legal fees is
within the range of evidence presented at trial.  See State Farm Fire &
Cas. Co. v. Rodriguez, 88 S.W.3d 313, 321 (Tex. App.—San Antonio 2002, pet.
denied) (“It is fundamental that a jury may blend the evidence admitted before
it and believe all, some or none of a witness’s testimony.”), abrogated on
other grounds by Don’s Bldg. Supply, Inc. v. OneBeacon Ins. Co., 267 S.W.3d
20, 27 (Tex. 2008).  We hold that there is more than a scintilla of evidence of
$35,000 in legal fees.

          3. 
Prorated Property Taxes

          The
trial court included $21,168.12 in prorated annual property taxes in its
deficiency calculation.  Sections 12 and 15 of the Deed of Trust provide that
if Appellants failed to pay any taxes “when due,” Ridgepine could pay the taxes
and that “any amounts disbursed by [Ridgepine] . . . shall be added to,
and become part of, the principal component of the Indebtedness.” [Emphasis
added.]  Appellants argue that Ridgepine did not actually pay the prorated
annual property taxes before the foreclosure sale and that, therefore,
Ridgepine cannot collect the unpaid property taxes under sections 12 and 15. 
However, the annual property taxes were not “due” before the June 2007
foreclosure sale.  Thus, there was no reason for Ridgepine to pay them. 
Rather, Appellants were required to, but did not, deposit amounts in escrow on
a monthly basis to pay the property taxes, meaning that there was not
sufficient money in escrow for Ridgepine to use when paying the annual property
taxes when they later became due.  Section 11 of the Note expressly permits
Ridgepine to recover all costs and expenses incurred “as a result of any
default under th[e] Note . . . or to enforce the provisions of any of the other
Loan Documents.”  There is more than a scintilla of evidence that Ridgepine
incurred an expense within the scope of section 11 when it paid the property
taxes with its own money because Appellants failed to deposit funds into escrow
prior to foreclosure.

          4. 
Compound Interest

          Appellants
next argue that the evidence demonstrated that compound interest was not to be
included in the deficiency calculation.  They specifically argue that a trial
exhibit indicates that Freddie Mac represented “as of March 27, 2007, [that]
the unpaid principal balance of the Note was $2,523,310, an amount that did not
include compounded interest.”  However, paragraph 3(c) of the Note specifically
provides that Ridgepine had the discretion to compound any interest that
remained past due for thirty days or more.  Freddie Mac’s representation of the
principal amount due in March 2007 does not alter Ridgepine’s right under the
Note’s terms to compound the interest at its discretion.  We hold that there is
legally sufficient evidence to support the trial court’s use of compounded
interest in calculating the deficiency.[10]

          5. 
Resulting Deficiency

          Finally,
Appellants assert that because there is no evidence to support the prepayment
premium, legal fees, prorated property taxes, and compound interest components
of the deficiency calculation, there is no evidence of a deficiency.  But we
have held that there is more than a scintilla of evidence to support each of
these components of the deficiency calculation.  Therefore, we necessarily hold
that legally sufficient evidence supports the trial court’s finding of a
deficiency of $146,615.40.  We overrule Appellants’ sixth and seventh issues.

V. 
Attorney’s Fees

          Appellants
argue in their eighth and ninth issues that if we reverse the trial court’s
judgment, we must also reverse the attorney’s fee award to Ridgepine and award attorney’s
fees to Appellants because Ridgepine is no longer the prevailing party and
because Appellants made a pretrial offer of settlement.  See Green Int’l,
Inc. v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (providing that a party must
“prevail on a cause of action for which attorney’s fees are recoverable” and
“recover damages” to be entitled to attorney’s fees under civil practice and
remedies code section 38.001); see also Tex. Civ. Prac. & Rem. Code
Ann. § 42.004 (Vernon 2008) (requiring recovery of litigation costs for party
making qualifying settlement offer); Tex. R. Civ. P. 167.4 (same).  However,
because we overruled Appellants’ first seven issues, we necessarily overrule
their eighth and ninth issues.

VI. 
Conclusion

          Having
overruled each of Appellants’ nine issues, we affirm the trial court’s
judgment.

 

 

ANNE GARDNER
JUSTICE

 

PANEL: 
GARDNER
and MCCOY, JJ; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by
Assignment).

 

DELIVERED:  March 17, 2011









[1]When appropriate, we refer
to Pineridge Associates, L.P. as Pineridge and LAC Properties Operating
Partnership, L.P. as LAC Properties.





[2]We refer to the Note and
Deed of Trust collectively as the Pineridge Mortgage.





[3]Ridgepine did not seek
personal liability against Appellants in its original petition.





[4]Section 43 of the Deed of
Trust provided that Ridgepine, “[a]t any time during the existence of an Event
of Default,” could “declare the Indebtedness to be immediately due and payable
without further demand” and “invoke the power of sale and any other remedies
permitted by Texas law or provided in this Instrument or in any other Loan
Document.”





[5]According to Black’s Law
Dictionary, “discharge” and “release” are synonymous.  Black’s Law Dictionary 530,
1403 (9th ed. 2009).





[6]We also note that property
code section 53.152(a) requires a lienholder, once the debt has been paid, to
provide a release of lien within ten days of a written request and that section
53.152(b) requires that the release “be in a form that would permit it to be filed
of record.”  Tex. Prop. Code Ann. § 53.152 (Vernon 2007) (emphasis
added).





[7]Indeed, Ridgepine
encountered difficulty obtaining title insurance for the Property when it
attempted to refinance in March 2008, well after the June 2007 foreclosure sale
extinguished the mechanic’s liens.  Ridgepine presented evidence that it was
required to deposit money into an escrow account before it could obtain title
insurance and that the mechanic’s liens caused the escrow requirement.





[8]Appellants also argue that
the trial court incorrectly interpreted the contract language by requiring the
mechanic’s liens to be released of record within thirty days of creation, contending
that the “within thirty days of creation” language applies only to mechanic’s
liens that are “otherwise remedied to Lender’s satisfaction,” not to mechanic’s
liens that are released of record.  Appellants’ argument is, however, based on
their assumption that the foreclosure sale caused the mechanic’s liens to be
released of record.  Because we have held otherwise, we need not decide whether
the “within thirty days of creation” language applies only to the “otherwise
remedied to Lender’s satisfaction” language.  See Tex. R. App. P. 47.1.





[9]Appellants contend only
that the extinguishment of the mechanic’s liens through the foreclosure sale is
synonymous with releasing the liens of record; they do not contend that the
mechanic’s liens were “otherwise remedied to [Ridgepine]’s satisfaction.”





[10]Appellants argue for the
first time in their reply brief that Ridgepine was required to prove that it
exercised its discretion in good faith and that Ridgepine failed to do so.  Appellants
waived this contention by raising it for the first time in their reply brief. See
Priddy v. Rawson, 282 S.W.3d 588, 597 (Tex. App.—Houston [14th Dist.] 2009,
pet. denied).