**Steven A. FEIN, M.D., Appellant,**

v.

**R.P.H., INC., Trustee, Appellee.**

**No. 14–99–00927–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 7, 2002.

Rehearing Overruled Feb. 28, 2002.

262

Christine Kirchner, Houston, Steven Jon Knight, Kingwood, for appellant.

Eric G. Carter, Tammy Danberg–Farney, Houston, for appellee.

Panel consists of Justices ANDERSON, HUDSON, and SEYMORE.

## OPINION

JOHN S. ANDERSON, Justice.

This is an appeal from a judgment against the maker of a nonrecourse promissory note. Appellant, Steven A. Fein, M.D., appeals the trial court's judgment in favor of appellee, R.P.H., Inc., Trustee, ("R.P.H.") on its action to collect on an unpaid nonrecourse promissory note. Because we hold Fein had no personal liability under the note, we reverse the trial court's judgment and render judgment that R.P.H. take nothing on its claims against Fein.

## I. BACKGROUND

On August 9, 1994, Fein, a gastroenterologist practicing in Pasadena, Texas, signed a promissory note in the amount of $125,000 in favor of "R.P.H., Inc., Trustee" in exchange for a five percent interest in Surgical Care Centers of Texas, L.C. ("Surgicare"). The note states in its entirety:

> FOR VALUE RECEIVED, after date, without grace, in the manner, on the dates, and in the amounts so herein stipulated, the undersigned, Steven A. Fein, M.D., an Individual, *without liability [sic], warranty or obligation;*
>
> PROMISE[S] TO PAY TO R.P.H., Inc., Trustee, of 3534 Vista, Pasadena, Texas 77504 the sum of:

> ONE HUNDRED TWENTY FIVE THOUSAND DOLLARS AND NO/100 CENTS ($125,000.00)
>
> in lawful money of the United States of America, which shall be legal tender, in payment of all debts and dues, public and private, at the time of payment, and to pay interest thereon from date until maturity at EIGHT percent per annum (8%), payable as stipulated herein.
>
> THE ENTIRE PRINCIPAL AND INTEREST AMOUNT IS, IF NOT SOONER PAID, SHALL BE DUE AND PAYABLE ON OR BEFORE THE 5TH DAY OF AUGUST 2004 OR UPON SALE OF THE COLLATERAL, 5% Interest in Surgical Care Centers of TX L.C. as collateral of this note.
>
> There is *no personal guaranty* of Steven A. Fein, M.D. or any guaranty of Pasadena Gastroenterology Associates, P.A. of this promissory note or indebtedness.[1]

The uncontroverted evidence at trial established that Fein never received the certificate of stock evidencing his ownership in Surgicare, but, instead, R.P.H. held the certificate in its possession.

In 1995, R.P.H. was planning to merge Surgicare with Amedisys, Inc. On June 23, 1995, R.P.H. informed Fein that in order to close the merger between Surgicare and Amedisys, Fein's "[percentage] of stock to be exchanged by shares of [Amedisys] ha[d] to be free and clear." R.P.H. stated that it would accept a percentage of Fein's shares in Surgicare equal to the amount of the debt. On June 27, 1995, Fein's attorney responded to R.P.H.'s request for payment by (1) requesting that Fein's certificate evidencing his interest in Surgicare be forwarded to him, (2) stating that Fein would exchange his five percent interest in Surgicare for 50,000 shares of Amedisys

---

1. Emphasis added.

stock, and (3) explaining that because Fein had no reason to pay off or refinance the note, he "does not intend to pay this note at present." R.P.H., which held Fein's Surgicare stock, made no further demand on Fein for payment of the note.

Effective June 30, 1995, Fein and the other owners of Surgicare exchanged their respective interests in Surgicare for shares in Amedisys common stock. Fein received 50,000 restricted shares of Amedisys common stock, as was evidenced by a certificate which he received in August 1995.

On July 3, 1997, R.P.H. made written demand on Fein for the surrender of the Surgicare stock under the note, even though Fein never had possession of the Surgicare stock and that stock had been exchanged for the Amedisys stock:

> This letter is written on behalf of my client R.P.H., Inc., Trustee to make immediate demand for the surrender of the shares of stock which you hold in Surgical Care Centers of Texas L.C. This stock is security for the above promissory note; however, unless my client [R.P.H.] has possession of the stock, its security interest is not perfected. Please forward your stock certificate to my office immediately. Alternatively, if you wish to sell the stock, we will hold it in escrow until the sale and credit the proceeds to the balance on the note. Any excess from the sale will be paid to you.
>
> Your failure to comply with this demand will be considered a default under the note. I will then be forced to take whatever measures are necessary in order to enforce my client's rights.

On July 28, 1997, R.P.H. filed this lawsuit against Fein for failure to either sur-render the Surgicare stock certificate or to repay the note. R.P.H. further alleged, in light of the exchange of Surgicare and Amedisys stock, the Amedisys stock should be surrendered to R.P.H. to serve as collateral for the note, but Fein had likewise failed to surrender that stock. In July 1997, Fein sold his 50,000 shares of Amedisys stock for $250,000. Fein kept the proceeds from the sale of the Amedisys stock and did not repay the note. R.P.H. amended its petition alleging Fein had breached the terms of the note by failing to turn over his Amedisys stock, selling the Amedisys stock, and failing to repay the note from the proceeds of the sale of the Amedisys stock.

Both Fein and R.P.H. moved for summary judgment on Fein's liability under the note. The trial court denied both motions for summary judgment and the case proceeded to trial. Fein also filed a motion for directed verdict, which was denied. The jury awarded R.P.H. $125,000 in damages for Fein's failure to repay the note.[2] The jury, however, failed to include accrued interest under the note and to award R.P.H. attorney's fees. R.P.H. filed a motion for judgment notwithstanding the verdict and to disregard the jury findings on the jury's failure to include accrued interest under the note and to award attorney's fees. The trial court granted R.P.H.'s motion and entered judgment in favor of R.P.H. for damages under the note in the amount of $153,931.50, prejudgment interest in the amount of $17,260.27, and reasonable and necessary attorney's fees in the amount of $14,718.13.

## II. STANDARDS OF REVIEW

As part of his first issue, Fein contends the trial court erred in denying his motion

---

**2.** The jury found against Fein on his counterclaim for fraud and his affirmative defense of excuse, which was based on R.P.H.'s waiver of its rights under the note and R.P.H.'s fraudulent concealment of material facts, and his affirmative defense of lack of consideration.

for directed verdict and his motion for judgment notwithstanding the verdict and to disregard jury findings.[3] Fein contends there is no evidence to support a finding that he ever had any personal obligation to pay the promissory note because the note is nonrecourse as a matter of law. Because these motions, if erroneously denied, are dispositive of this appeal, we will address them in the context of Fein's complaint regarding the judgment holding him personally liable on the nonrecourse note.

■■■ An appeal from the denial of a motion for directed verdict is essentially a challenge to the legal sufficiency of the evidence. *Kershner v. State Bar of Tex.*, 879 S.W.2d 343, 346 (Tex.App.-Houston [14th Dist.] 1994, writ denied). Therefore, we must review the denial of a directed verdict by considering all the evidence in the light most favorable to the nonmovant, disregarding all evidence to the contrary, and resolving all reasonable inferences in favor of the nonmovant. *Russell v. City of Bryan*, 919 S.W.2d 698, 705 (Tex.App.-Houston [14th Dist.] 1996, writ denied). To reverse the denial of a motion for directed verdict, the appellant must show the evidence conclusively proves a fact that establishes appellant's right to judgment as a matter of law and there is no evidence to the contrary. *Weidner v. Sanchez*, 14 S.W.3d 353, 373 (Tex.App.-Houston [14th Dist.] 2000, no pet.).

■■■ A motion for judgment notwithstanding the verdict is based on the same grounds that has or could have been urged in a motion for directed verdict. Tex.R. Civ. P. 301. Similarly, a complaint that the trial court erred in refusing to grant judgment notwithstanding the verdict raises on appeal a challenge to the legal sufficiency of the evidence. *Insurance Co. of N. Am.*

*v. Morris*, 928 S.W.2d 133, 152 (Tex. App–Houston [14th Dist.] 1996), *aff'd in part and rev'd in part on other grounds*, 981 S.W.2d 667 (Tex.1998). We review the evidence in the light most favorable to the finding, considering only the evidence and inferences supporting the finding, while rejecting the evidence and inferences to the contrary. *Gregorcyk v. Al Hogan Builder, Inc.*, 884 S.W.2d 523, 525 (Tex. App.-Corpus Christi 1994, writ denied). The jury's finding will be upheld if there is more than a scintilla of evidence to support the finding. *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 228 (Tex.1990).

### III. Nonrecourse Note

In his first issue, Fein contends the trial court erred in holding him personally liable for failure to repay the note because the unambiguous language of the note provides he is to have no liability for nonpayment of the note and R.P.H.'s sole remedy is enforcement of its security interest in the collateral.

■■■ Whether a contract is ambiguous is a question of law. *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex.1996). If the contract is subject to two or more reasonable interpretations, the contract is ambiguous, thereby creating a fact issue on the parties' intent. *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex.1996). On the other hand, if the written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex.1983). The fact that the parties put forth conflicting interpretations does not create an ambiguity. *Columbia Gas Transmission*

---

**3.** R.P.H. argues Fein has waived error due to insufficient briefing. We disagree and find Fein's briefing complies with the Texas Rules of Appellate Procedure. Tex.R.App. P. 38.1.

*Corp.*, 940 S.W.2d at 589. If the contract is unambiguous, we must enforce it as written. *Transcontinental Gas Pipeline Corp. v. Texaco, Inc.*, 35 S.W.3d 658, 665 (Tex.App.-Houston [1st Dist.] 2000, pet. filed). The trial court errs if it does not construe an unambiguous contract as a matter of law and, instead, submits the issue to the jury. *Id.* Here, neither party asserts the note is ambiguous.

 When construing a contract, courts must give effect to the true intentions of the parties as expressed in the written instrument. *Lenape Res. Corp. v. Tennessee Gas Pipeline Co.*, 925 S.W.2d 565, 574 (Tex.1996). The contract must be read as a whole, rather than by isolating a certain phrase, sentence, or section of the agreement. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995). We presume the parties to the contract intended for every clause to have some effect. *Heritage Resources, Inc.*, 939 S.W.2d at 121. The language in a contract is to be given its plain grammatical meaning unless doing so would defeat the parties' intent. *DeWitt County Elec. Coop., Inc. v. Parks*, 1 S.W.3d 96, 101 (Tex.1999).

 Fein argues the only remedy available to R.P.H. to satisfy payment of the note was to maintain and enforce its security interest in the collateral. A nonrecourse note has the effect of making a note payable out of a particular fund or source, namely, the proceeds of the sale of the collateral securing the note. *Burns v. Resolution Trust Corp.*, 880 S.W.2d 149, 153 (Tex.App.-Houston [14th Dist.] 1994, no writ) (citing *Hinckley v. Eggers*, 587 S.W.2d 448, 450 (Tex.Civ.App.-Dallas 1979, writ ref'd n.r.e.)). Therefore, under a nonrecourse note, the maker does not personally guarantee repayment of the note and will, thus, have no personal liability.[4] If the maker of a nonrecourse note elects not to repay the note, he is not exposed to any personal liability, but, instead, takes the risk that the collateral securing the note will be lost if the holder of the note decides to enforce its security interest in the collateral.

 R.P.H. contends Fein's personal liability under the note has not been waived. We disagree with this contention. The note clearly states *twice* that Fein has no personal liability under the note. R.P.H. further argues the note does not limit its remedy to foreclosure on the Surgicare stock in the event of default so that Fein would not have to repay the note.[5]

---

4. *See, e.g., MBank Houston, N.A. v. Armco, Inc.*, 1 F.3d 1439, 1441 (5th Cir.1993) (observing that nonrecourse loan insulated principals from personal liability); *Messagephone, Inc. v. Texas Life, Acc., Health & Hosp. Servs. Ins. Guar. Ass'n*, 966 S.W.2d 133, 135 (Tex. App.-Austin 1998, no pet.) (stating that under nonrecourse note, payee agreed to look only to property securing note rather than to maker); *Duracon, Inc. v. Price*, 817 S.W.2d 147, 149 (Tex.App.-El Paso 1991, writ denied) (stating that in event of default, personal judgment could not be taken against lessee under nonrecourse provision of lease); *Schultz v. Weaver*, 780 S.W.2d 323, 324 (Tex.App.-Austin 1989, no writ) (observing that nonrecourse clause provided maker bore no personal liability for payment of note and payee would only look to property securing note in event of

default); *Trafalgar Invs., Ltd. v. Westminster Assocs., Ltd.*, 715 S.W.2d 745, 747 (Tex.App.-Austin 1986, no writ) (noting that nonrecourse meant that in event of default, payee could look only to collateral for unpaid funds); BLACK'S LAW DICTIONARY 1057 (6th ed.1990) (defining nonrecourse debt as debt secured by property that it is used to purchase; purchaser is not personally liable for debt upon default; instead, creditor's recourse is to repossess related property upon default).

5. *See, e.g., Pollock v. Federal Deposit Ins. Co.*, 17 F.3d 798, 800 (5th Cir.1994) (construing note stating, "If this Note is not paid at maturity, . . . Holder's *sole remedy* shall be to foreclose its security interest and lien upon the Property described in the Deed of Trust, and

To the contrary, even though the note the does not use language stating specifically that R.P.H.'s "sole remedy" is to look to the collateral in satisfaction of the note, the note *clearly identifies* the Surgicare stock as the collateral securing the note.

■ R.P.H. contends, alternatively, that even if the note unambiguously provides that Fein does not have any personal liability for its repayment, the note, nonetheless, provides the entire principal and interest were "DUE AND PAYABLE ON OR BEFORE THE 5TH DAY OF AUGUST 2004 OR UPON THE SALE OF THE COLLATERAL." Specifically, R.P.H. maintains the note was payable out of the proceeds of the sale of Amedisys stock. We also disagree with this assertion.

The terms of the note expressly provide the Surgicare stock served as the collateral securing the note. Therefore, under the note, the sale of the collateral means the sale of the Surgicare stock. The Surgicare stock was exchanged for Amedisys stock. Prior to the consummation of the Amedisys transaction, Fein made it clear he intended to proceed with the exchange of the Surgicare stock for the Amedisys stock, but he did not intend to pay off the note at that time. R.P.H. allowed Fein to exchange his Surgicare stock for Amedisys stock without attempting to substitute the Amedisys stock for the Surgicare stock as new collateral securing the note. Nor did R.P.H. attempt to move against the Surgicare stock prior to the exchange for Amedisys stock, even though R.P.H. held Fein's Surgicare stock certificates. Moreover, when R.P.H. demanded that Fein surren-

der the Surgicare stock in 1997, albeit two years late, it demonstrated its understanding that its only remedy in the event of default was to look to the stated collateral securing the loan, i.e., the Surgicare stock.

■ R.P.H. has failed to cite any authority that it has the right to move against property not identified in the note as the collateral securing the note. Indeed, the courts are not at liberty to redraft the terms of a contract while professing to construe it, so as to impose additional duties on one party. *Zapata Corp. v. Zapata Gulf Marine Corp.*, 986 S.W.2d 785, 787–88 (Tex.App.-Houston [1st Dist.] 1999, no pet.); *Bailey, Vaught, Robertson & Co. v. Remington Invs., Inc.*, 888 S.W.2d 860, 865 (Tex.App.-Dallas 1994, no writ); *Southwestern Gas Pipeline, Inc. v. Scaling*, 870 S.W.2d 180, 183 (Tex.App.-Fort Worth 1994, writ denied) (citing *General Am. Indem. Co. v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960)).

> Simply put, we cannot change the contract merely because we or one of the parties comes to dislike its provisions or thinks that something else is needed in it.... [The parties to the contract] are entitled to select what terms and provisions to include in a contract before executing it. And, in so choosing, each is entitled to rely upon the words selected to demarcate their respective obligations and rights. In short, the parties strike the deal *they* choose to strike and, thus, voluntarily bind themselves in the manner *they* choose. And, that is why parties are bound by their agreement as written. For a court to change the par-

---

Maker shall have no personal liability to Holder for the Indebtedness herein described") (emphasis added); *Wood v. Henry S. Miller Co.*, 597 S.W.2d 332, 332–33 (Tex. 1980) (construing note stating, "... the undersigned shall have no personal liability for the payment of the note secured hereby, and in the event of default, the holder of said note shall have the *mortgaged property alone as security* for the payment of said note....") (emphasis added).

ties' agreement merely because the court did not like the agreement, or because one of the parties subsequently found it distasteful, would be to undermine not only the sanctity afforded the contract but also the expectations of those who created and relied upon it. *Cross Timbers Oil Co. v. Exxon Corp.*, 22 S.W.3d 24, 26 (Tex.App.-Amarillo 2000, no pet.) (emphasis in original) (citations omitted); *see also Lambert v. Affiliated Foods, Inc.*, 20 S.W.3d 1, 6 (Tex.App.-Amarillo 1999), *aff'd*, 44 S.W.3d 544 (Tex.2001) (stating courts are not permitted to draft new contract between parties, "regardless of whether one or more of the parties contracted wisely or foolishly, or created a hardship for himself"); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 911 (Tex.App.-Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex. 1998) (citing *Provident Fire Ins. Co. v. Ashy*, 139 Tex. 334, 339, 162 S.W.2d 684, 687 (1942)) (observing that because parties make their own contract, courts "lack the power to vary those terms to protect one of them from the unforeseen consequences of their agreement"). We cannot rewrite the terms of the note to refer to the Amedisys stock as the collateral securing the note in lieu of the Surgicare stock.

■ Furthermore, we will not imply a term allowing the Amedisys stock to be substituted for the Surgicare stock as the collateral securing the note. Texas law does not favor implied covenants. *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 434 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). The courts will not imply a covenant unless it appears from the express terms of the contract that " 'it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it,' and therefore they omitted to do so, or 'it must appear that it is necessary to infer such a covenant in order to effectuate the full purpose of the contract as a whole as gathered from the written instrument.' " *HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex.1998) (quoting *Danciger Oil & Ref. Co. v. Powell*, 137 Tex. 484, 154 S.W.2d 632, 635 (1941)). We do not find from the express terms of the note that the parties contemplated substituting the collateral securing the note.

■ R.P.H. further contends that enforcing the nonrecourse language would render the "upon sale of the collateral" language meaningless. R.P.H., therefore, argues that in order to give effect to all the terms of the note, it must be read to require that it was to be repaid out of the proceeds of the "sale of the collateral." There are two problems with R.P.H.'s argument. First, R.P.H.'s argument is premised on the mistaken assumption that the note could be repaid out of the proceeds of the sale of the Amedisys stock. As discussed above, the note clearly states the collateral securing the note was the Surgicare stock and in no way provides that the Surgicare stock and the Amedisys stock are interchangeable. Because R.P.H. failed to substitute the Amedisys stock as the new collateral in place of the Surgicare stock, the sale of the Amedisys stock was not a sale of the collateral.

■ Second, the due and payable clause is not inconsistent with the nonrecourse nature of the note. Instead, that clause is merely determinative of when the debt is due and payable so that the holder can enforce its rights in the collateral, i.e., the Surgicare stock. Therefore, even if the Surgicare stock had still been available to R.P.H. to satisfy the note, this would not have affected the nonrecourse nature of the note because R.P.H.'s remedy was to enforce its rights in the Surgicare stock and foreclose on the stock, an easy task inasmuch as R.P.H. had Fein's stock certificate in its possession. We presume the

parties intended to give effect to every clause in the agreement and did not intend to render any clause meaningless. *Biaza v. Simon,* 879 S.W.2d 349, 356 (Tex.App.-Houston [14th Dist.] 1994, writ denied). To read the note as requiring that it be repaid out of the proceeds of the sale of the Amedisys stock (not the stated collateral) held by Fein would render the nonrecourse language meaningless because the sale of the Amedisys stock was the sale of a personal asset not subject to the terms of the note. Again, we will not redraft this note to provide for Fein's personal liability where it clearly states that he is to have none. *Zapata Corp.,* 986 S.W.2d at 787–88; *Bailey, Vaught, Robertson & Co.,* 888 S.W.2d at 865; *Southwestern Gas Pipeline, Inc.,* 870 S.W.2d at 183.

The note is an unambiguous nonrecourse note waiving Fein's personal liability. Because there is no evidence Fein could be held personally liable under clear terms of the nonrecourse note, the trial court erred in denying Fein's motion for directed verdict and motion for judgment notwithstanding the verdict and to disregard jury findings. We sustain Fein's first issue. Because Fein's first issue is dispositive of this case, it is not necessary to address Fein's remaining issues. Accordingly, we reverse the judgment of the trial court and render judgment that R.P.H. take nothing on its claims against Fein.

### IV.

#### R.P.H.'s Cross–Point of Error

Fein's fourth issue asks whether the trial court erred by granting R.P.H.'s motion for judgment notwithstanding the verdict of $0.00 for R.P.H.'s attorney's fees and finding attorney's fees of $14,718.13. In its brief responding to Fein's issue four, R.P.H. contends first that the trial court did not err by granting its motion for JNOV and to disregard jury findings as to

question two of the charge, plaintiff's attorney's fees. Alternatively, R.P.H. asserts in a cross-point the jury's finding it had incurred $0.00 in attorney's fees is against the great weight and preponderance of the evidence, and the case should be reversed and remanded for a new trial on the issue of attorney's fees.

We have reversed the entirety of the trial court's judgment and rendered judgment R.P.H. take nothing on its claims against Fein. Accordingly, we need not reach a cross-point supporting the validity of a particular element within that erroneous judgment.

Judgment of the trial court is reversed and judgment is here rendered that R.P.H. take nothing on its claims against Fein.