# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1324

_____

Semi-Materials Co., Ltd.;      *
SMC Shanghai,                  *
                               *
        Appellants,            *
   v.                          *
                               *
MEMC Electronic Materials, Inc.; *
MEMC Pasadena, Inc.,           *
                               *
        Appellees.             *


_____

No. 10-1626

_____

Semi-Materials Co., Ltd.;      *
SMC Shanghai,                  *
                               *
        Cross-Appellees,       *
   v.                          *
                               *
MEMC Electronic Materials, Inc., *
                               *
        Defendant,             *
                               *
MEMC Pasadena, Inc.,           *
                               *
        Cross-Appellant.       *

Appeals from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: April 11, 2011
Filed: September 14, 2011

_____

Before RILEY, Chief Judge, BENTON and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Polysilicon producer MEMC Electronic Materials, Inc. and MEMC Pasadena, Inc. (together "MEMC") entered into exclusive sales representation agreements with Semi-Materials Company and SMC Shanghai (together "Semi-Materials"). Under these agreements, Semi-Materials was to serve as the sales representative for MEMC in China and Korea. Semi-Materials brought suit against MEMC, claiming it was entitled to certain commissions. The district court granted partial summary judgment to MEMC, limiting the claims for which Semi-Materials could seek damages. The remaining claims went to a jury, which returned a verdict in favor of Semi-Materials. MEMC sought a judgment as a matter of law (JAML), which the district court denied. Semi-Materials now appeals the district court's adverse grant of partial summary judgment, and MEMC cross-appeals the denial of its motion for JAML. We reverse the district court's grant of partial summary judgment and affirm its denial of the motion for JAML.

I.

As the first issue for review is the district court's grant of partial summary judgment against Semi-Materials, we state these facts in the light most favorable to Semi-Materials. Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 991 (8th Cir. 2010). MEMC manufactures polysilicon and silane gas, both raw materials used in the production of products such as semiconductor chips and solar cells. Beginning

around 1996, MEMC engaged Semi-Materials[1] to serve as MEMC's agent for the sale of polysilicon in South Korea. This arrangement was entered into between Semi-Materials President Kun Park and MEMC Global Polysilicon Sales Manager Robert Onofrey without a formal written agreement. In 2003, after Sanjeev Lahoti replaced Onofrey as MEMC's Global Polysilicon Sales Manager, Semi-Materials sought a written agreement with MEMC to memorialize its role as exclusive sales agent in South Korea.

In July 2003, MEMC and Semi-Materials executed an "International Sales Representation Agreement" with respect to South Korea. In April 2004, MEMC looked to enter the Chinese market, and MEMC and Semi-Materials entered into a similar agreement with respect to China (collectively "the Agreements"). The Agreements contained similar provisions, including that Semi-Materials was to serve as "exclusive sales representative" for MEMC in South Korea and China. The Agreements also contained the following provision:

> The compensation paid to [Semi-Materials] by [MEMC] will be a percentage of the NET SALES PRICE of PRODUCTS that are purchased from [MEMC] by the user of the PRODUCTS and delivered by [MEMC] to a site within the TERRITORY. The compensation percentage rates are listed in Appendix A.

Under the Agreements, Semi-Materials was "authorized to solicit and promote, but not consummate sales of [polysilicon and saline gas] in [China and South Korea]." Semi-Materials was not a party to the sales contracts entered into between MEMC and buyers of polysilicon and saline gas. In many of the sales contracts between MEMC and various buyers in China and South Korea, the products were sold under "ex works" shipping terms, meaning that MEMC satisfied the delivery requirement under

---

[1]Many of these engagements involved Semi-Materials' predecessor in interest, World Tech. For the sake of clarity, we refer only to Semi-Materials.

the contract when it placed the goods at the disposal of the buyer, either at MEMC's factory or some other agreed-upon location. Additionally, several other contracts involved "free carrier" terms whereby MEMC provided the goods, cleared for export, to a carrier selected by the buyer. Finally, under some sales contracts, MEMC was required to arrange for the transportation of the product to the buyer in either China or South Korea.

Semi-Materials brought a breach of contract suit against MEMC, alleging that MEMC sold polysilicon and saline gas in China and South Korea without paying commissions to Semi-Materials. MEMC sought summary judgment, arguing, inter alia, that it did not owe commissions to Semi-Materials for those sales to buyers in China and South Korea that were made with "ex works" or "free carrier" terms. MEMC reasoned that under those shipping terms, the risk of loss passed from MEMC to the buyer before the product entered China or South Korea, and therefore the products were not "*delivered by* [MEMC] to a site within [either China or South Korea]." Based on this reasoning, the district court entered partial summary judgment in favor of MEMC, preventing Semi-Materials from pursuing damages based on those sales made with "ex works" or "free carrier" terms.

Trial was held on the remaining claims, and a jury returned a verdict in favor of Semi-Materials, determining that MEMC was liable for $29,000 based on a breach of the China Agreement and $180,000 based on a breach of the Korea Agreement. MEMC argued in a motion for JAML that Lahoti did not have the actual or apparent authority to bind MEMC to the Agreements, and alternatively, that Semi-Materials did not perform its material obligations under the Agreements. The district court denied the JAML motion.

Semi-Materials initiated this appeal, arguing that the district court erred in granting partial summary judgment to MEMC. MEMC has cross appealed, challenging the district court's denial of its JAML motion.

II.

We review a district court's grant of summary judgment de novo. Anderson v. Durham D & M, L.L.C., 606 F.3d 513, 518 (8th Cir. 2010). We will affirm the grant of summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Both the China Agreement and the Korea Agreement contain choice-of-law provisions designating Texas law as the law of the contracts, and the parties agree to the application of Texas law. When interpreting a written contract under Texas law, the court is "to ascertain the true intent of the parties as expressed in the instrument." Nat'l Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). To make this determination, we "examine all parts of the contract and the circumstances surrounding the formulation of the contract." Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd., 940 S.W.2d 587, 591 (Tex. 1996). Further, we should avoid "isolating a certain phrase, sentence, or section of the agreement." Fein v. R.P.H., Inc., 68 S.W.3d 260, 266 (Tex. App. 2002). Contract language "should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated." Reilly v. Rangers Mgmt., Inc., 727 S.W.2d 527, 529 (Tex. 1987). "If a written contract is so worded that it can be given a definite or certain legal meaning, then it is not ambiguous." CBI Indus., Inc., 907 S.W.2d at 520. However, when the contract language "is subject to two or more reasonable interpretations, it is ambiguous." Id. We are cautioned to "construe contracts from a utilitarian standpoint," and we should avoid "embrac[ing] strained rules of interpretation which would avoid ambiguity at all costs." Reilly, 727 S.W.2d at 530.

Considering the four corners of the Agreements at issue here, we cannot agree with the district court's conclusion that the Agreements clearly and unambigously limit Semi-Materials to receiving commissions only on those sales which included terms whereby the risk of loss remained with MEMC until the product entered China

or South Korea. While it may be that the "delivered by" language intended that result, nothing in the contract is so clear. Semi-Materials' argument that the "delivered by" language equates to consummation of a sale between MEMC and a buyer in either China or South Korea is also reasonable, and it is perhaps the better interpretation considering the overall purpose of the Agreements and the course of dealings between MEMC and Semi-Materials. If MEMC's interpretation of the Agreements prevails, the overall effect of the Agreements would be lost because MEMC could avoid ever paying a commission by simply shipping the goods using "ex works" or "free carrier" terms. However, "[w]e presume the parties to the contract intended for every clause to have some effect," Fein, 68 S.W.3d at 266, and thus we are unable to simply ignore the "delivered by" language. Because the meaning and intent of that language is uncertain and subject to more than one reasonable interpretation, see CBI Indus., Inc., 907 S.W.2d at 520, it is necessary to reverse the grant of partial summary judgment and remand this matter to the district court for trial, see K3 Enters. v. McDaniel, 8 S.W.3d 455, 458 (Tex. App. 2000) ("When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue.").

III.

"We review a district court's denial of a motion for judgment as a matter of law de novo." Quigley v. Winter, 598 F.3d 938, 946 (8th Cir. 2010) (quotation omitted). "We must affirm the jury's verdict unless, after viewing the evidence in the light most favorable to [Semi-Materials], we conclude that no reasonable jury could have found in [its] favor." Id. (quotation omitted). "We will not set aside a jury verdict unless there is a complete absence of probative facts to support the verdict." Id. (quotation omitted).

MEMC moved for JAML, arguing that Lahoti did not have the authority–actual or apparent–to enter into the Agreements with Semi-Materials on MEMC's behalf.

In reply, Semi-Materials limited its response to the question of whether Lahoti had apparent authority to enter into the Agreements. The Texas Supreme Court has explained:

> Apparent authority . . . is based on estoppel, arising either from a principal knowingly permitting an agent to hold himself out as having authority or by a principal's actions which lack such ordinary care as to clothe an agent with the indicia of authority, thus leading a reasonably prudent person to believe that the agent has the authority he purports to exercise. [T]he principal's full knowledge of all material facts is essential to establish a claim of apparent authority based on estoppel. Moreover, when making that determination, only the conduct of the principal is relevant. Finally, the standard is that of a reasonably prudent person, using diligence and discretion to ascertain the agent's authority. Thus, to determine an agent's apparent authority we examine the conduct of the principal and the reasonableness of the third party's assumptions about authority.

Gaines v. Kelly, 235 S.W.3d 179, 182-83 (Tex. 2007) (internal citations and quotations omitted).[2]

The evidence presented to the jury at trial supported its finding that MEMC clothed Lahoti with the authority to enter into the Agreements with Semi-Materials. Park and Onofrey had an informal commission arrangement dating back to 1999. Two MEMC presidents had previously told Park that Onofrey had the authority to deal with Park on polysilicon matters. This informal arrangement continued after Lahoti took over for Onofrey, and when that transition occurred, Onofrey told Park that Lahoti was taking over all responsibilities dealing with commissions.

---

[2]Although both parties apply Texas law to this question, to the extent that one party might advocate for the application of Missouri law, we note that Missouri uses the same standard to determine whether apparent authority is established. See Alexander v. Chandler, 179 S.W.3d 385, 388 (Mo. Ct. App. 2005).

Furthermore, MEMC executive finance officers approved substantial commissions to Semi-Materials during the time period covered by the Agreements, suggesting that MEMC was aware of the Agreements it had with Semi-Materials. Accordingly, MEMC cannot show there were no probative facts presented at trial supporting the jury's determination that Semi-Materials reasonably relied upon Lahoti's apparent authority to enter into the Agreements.

Moreover, we reject MEMC's argument that Semi-Materials failed to perform a material obligation of the contracts to provide regular reports to MEMC. Park testified at trial that he completed regular reporting to MEMC through phone calls, and that this was the preference of MEMC due to the speed of the market in Asia. Additionally, Park testified that he sent emails to MEMC reporting on market conditions, that MEMC officials made semi-annual trips to Asia where Park reported in person, and that Park made regular trips to the United States to report in person to MEMC officials. Based on this testimony, a reasonable jury could find that Semi-Materials performed its reporting obligations under the Agreements.

## IV.

Accordingly, we reverse the district court's grant of partial summary judgment in favor of MEMC, and we affirm its denial of MEMC's JAML motion. We remand this matter to the district court for further proceedings consistent with this opinion.

_____